### KENTUCKY RIVER COAL CORP. et al.

v.

### GRIGSBY et al.

Court of Appeals of Kentucky.

Jan. 15, 1954.

C. D. Carpenter, Bruce Stephens, Jr., Hazard, for appellants.

Napier & Napier, Hazard, for appellees.

DUNCAN, Justice.

This action in trespass to recover the value of coal mined and removed was tried as an equitable action, and we shall so treat it on the appeal. Appellees, the heirs at law of B. F. Grigsby, Jr., sought damages for the mining of 20,000 tons of coal from the land in controversy, the value of which was alleged to be $10,000. Appellants' answer and counterclaim denied appellees title and asserted ownership in appellants. The Chancellor found for appellees and awarded them judgment for $2,500 for 10,000 tons of coal of the value of 25¢ per ton.

The boundary in controversy, consisting of approximately four acres, is located on Lotts Creek in Perry County. The respec-

tive chains of title run from a common source and the location of a conditional line established in deeds from B. F. Grigsby, Sr., to B. F. Grigsby, Jr., and from B. F. Grigsby, Sr., to the heirs of Edward Grigsby is determinative of the question of title. In the interest of brevity, we shall omit a detailed reference to the numerous conveyances marking devolution of title from B. F. Grigsby, Sr., the common grantor.

On February 20, 1874, B. F. Grigsby, Sr., conveyed to B. F. Grigsby, Jr., a tract of land in which the conditional line was described as running with the top of the dividing ridge between Second Creek and Lotts Creek; thence down to Lotts Creek; thence across the creek; thence to the top of the divide between Trace Fork and Lotts Creek. On February 21, 1874, B. F. Grigsby, Sr., conveyed to the heirs of Edward Grigsby an adjoining boundary, therein describing the conditional line as beginning at a rock on the south side of Lotts Creek at or near the creek. Other lines of the conveyance run partially around the tract and then return to the conditional line at a white oak on the north side of Lotts Creek opposite the rock on which it begins. The only points or monuments fixed as identifying the conditional line, other than ridges, drains, or cliffs, are the rock on the south side of Lotts Creek and the white oak on the north side of the creek. The omission of degrees and distances between points would render it practically impossible to locate the conditional line except for the fact that subsequent deeds refer to the same points with descriptions sufficiently accurate to identify them.

On February 19, 1906, B. F. Grigsby, Jr., conveyed to Slemp Coal Company, appellants' ancestor in title, the minerals under a tract of approximately 100 acres. Two of the lines of this deed were described as running as follows: North 28.05 east 510 feet to a cross on a rock on the south bank of Lotts Creek, bearing north 27 west 913 feet from the mouth of Suck's Branch of said creek; thence north 53.50 east 175 feet to an oak stump on the north bank of said creek, crossing the creek at 45 feet. From

a survey of the description in this deed, by reference to descriptions of adjoining boundaries, appellants' surveyors testified that the rock and oak stump therein mentioned were the same monuments referred to in the description of the conditional line, and that the line between these objects was a part of the conditional line. If this location is accepted, appellants are the owners of the coal which was removed.

Appellees contend that the conditional line corners on an oak, buckeye, and rock on the north side of Lotts Creek, located some 200 feet east of the white oak stump located as the corner of the Slemp Coal Company deed. As proof of this fact, some of the appellees testified that B. F. Grigsby, Jr., had stated on several occasions during his lifetime that the oak, buckeye, and rock was a corner of the conditional line. This evidence was admitted over the objection of appellants.

It is generally held that declarations of a deceased person made by him while he was the owner and in possession of land, and while in the act of pointing out his boundary and their marks, are competent to establish, not only the extent of his possession, but that the boundaries and marks are as stated. However, the rule does not relax the provisions of Civil Code of Practice § 606, subsec. 2 (now KRS 421.-210(2), providing that no person shall testify for himself concerning any verbal statement of or any transaction with a person who is dead when the testimony is offered to be given. Even if the declarations of B. F. Grigsby, Jr., had been otherwise competent under the general rule, appellees, who were interested parties, were precluded from testifying to the statements of their ancestor. Williams v. Waddle, 285 Ky. 416, 148 S.W.2d 298. The testimony was clearly incompetent.

The oak stump located near the buckeye and rock which appellees locate as the corner is not a white oak as described in deeds referring to the conditional line but is of the variety known as a chinkapin or scrub oak. A count of the annulations discloses

that the tree is not nearly old enough to have been standing in 1874 when the conditional line was established. Other significant factors, not necessary to discuss, mitigate strongly against appellees' location of the line in question.

 Eliminating the incompetent evidence to which we have referred, there is not even a scintilla of evidence supporting appellees' location of the conditional line. We are convinced that it was correctly located by appellants and that the coal which was mined was within the boundary of the Slemp Coal Company deed.

The judgment is reversed with directions to dismiss appellees' petition and enter a judgment on appellants' counterclaim adjudging it the owner of the disputed boundary.